## City of Ludlow v. Commonwealth.

(Decided April 12, 1912.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1. Nuisance—When City May be Indicted for Maintaining—Streets—
   Permitting to Become Dangerous.—A city may be indicted for
   maintaining a common nuisance where it permits a street to be
   dangerous for travel although the officers of the city may be liable
   to indictment therefor.

2. Nuisance—Instruction, When Not Defective.—An instruction
   which sets out the facts on which the jury are to find their ver-
   dict, is not defective in failing to tell the jury that these facts
   make out a common nuisance.

JACKSON & WOODWARD for appellant.

R. G. WILLIAMS, JAMES GARNETT, Attorney General and M.
M. LOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

The city of Ludlow was indicted by the grand jury of
Kenton County for maintaining a common nuisance in
failing to keep in a safe condition for the use of the
traveling public one of the city highways. On a trial of
the case it was fined $200, and appeals.

Ludlow is a city of the fourth class. It has no board
of public works; and under the statute the duties im-
posed upon the board are performed by the council. By
section 3584, Kentucky Statutes, "the board of public
works shall have exclusive power and control over the
construction * * * repairing * * * and improving
of all streets." * * * The chief point made on appeal
is that the city can not be indicted for the failure of the
council to repair the streets, but that the council must be
indicted. In support of this contention we are referred
to the case of Georgetown v. Commonwealth, 115 Ky.,
385. In that case the city allowed an open drain between
the gas plant and the Big Spring Branch to become
filled with fifth and to be a nuisance. But the city did not
own the gas plant. The nuisance while within the city
was not on the property of the city or created by it. The
city had passed ordinances punishing the creating of
such a nuisance, but it had failed to enforce its ordi-

nances. It was held in that case that in enforcing its ordinances the city acts in a governmental capacity and that it may not be indicted for suffering a common nuisance because it failed to enforce its criminal or penal laws. But in the opinion the distinction between that case and such a case as we have here is expressly pointed out. In Davis v. Bangor, 42 Me., 522, it was held that in all cases where the municipality may be held for damages for a defective highway in a suit by the person sustaining special damages thereby, the municipality may be indicted for a common nuisance if its acts amount to a common nuisance. It seems to us that this is a sound principle. We have held in a number of cases that the title to a city street is in the city and that the city is liable to persons injured by reason of its negligence in failing to keep its streets in a reasonably safe condition. This ruling necessarily rests upon the ground that the city is liable for the negligence of its officers in failing to keep the streets in repair, and if the failure to keep the streets in repair is a wrongful act of the city, we can not see upon what principle it can be maintained that the city may not be prosecuted for maintaining a common nuisance when its acts in the matter amount to creating a nuisance. The rule that the city may be indicted has been held in Maine, Massachusetts, New Hampshire, Pennsylvania, Tennessee and Canada. (State v. Madison, 63 Me., 546; Commonwealth v. Boston, 16 Pick., 442; Commonwealth v. New Bedford, 2 Gray, 245; State v. Dover, 46 N. H., 452; Commonwealth v. Bredin, 165 Pa. St., 224; Chattanooga v. Commonwealth, 5 Sneed, 578; Reg. v. London, 32 Ont., 326; Dillon on Municipal Corporations, sections 1597-8 (last edition), 1 Smith Modern Law of Municipal Corporations, section 823; Elliott on Roads and Streets, section 662, and cases cited.

In Saukville v. State, 69 Wis., 178, a conviction was sustained against a city for failing to repair a bridge which was a public highway within the city limits. In State v. Portland, 74 Me., 268, the city was indicted for creating a common nuisance by allowing a sewer to overflow. It seems to us that these cases rest upon a sound principle, and that as the city is liable to a person injured by reason of its negligence in the care of its sewers, bridges or highways, it may be indicted by the State if it thus creates a common nuisance. The rule declared by the English courts is that where the town may be indicted for a nuisance, an action for redress may be maintained

by the person injured. (Henley v. Lyme Regis, 5 Bing., 91.) The city officers may be fined and imprisoned if they create or maintain a nuisance. (Commonwealth v. Trustees, 7·B. Mon., 38.) But the city whom they represent, may at the election of the State be indicted, as the duty is by the statute imposed on the city. Section 3560, Kentucky Statutes, provides:

"Public ways, as used in this act, shall mean all public streets, alleys, sidewalks, roads, lanes, avenues, highways, and thoroughfares, and the same shall be under the exclusive management and control of the city, with powers to improve them by original construction, or to reconstruct them, as may be prescribed by ordinance."

It is true that the county may not be indicted for a common nuisance for failing to keep its highways safe; but a county is only a political subdivision of the State. The title to the highway is not in the county, and the county is not answerable in damages to a person who is injured by reason of a defect in the highway. In such cases the county authorities who are negligent must be indicted for creating the nuisance. The distinction is an old one and comes to us with the common law from England. It appears to rest on this ground: The counties in England are merely political subdivisions created for convenience for governmental purposes. On the other hand city charters in England are royal grants and confer privileges upon the citizens of the city not possessed by the people of England at large. Thus the charter of the city of London confers upon the people of London many exclusive privileges, and the same is true of the charters of the other English cities, especially those that are very old. So it was that the cities of these favored communities possessing peculiar privileges under royal grants were held to a different responsibility from that imposed upon mere political subdivisions. Our ancestors brought the common law with them to this country, and originally all cities were incorporated by a special act of the General Assembly, conferring privileges more or less valuable; and so the common law distinction between these municipalities and the counties has been steadily maintained in this country, although under recent legislation much of the reason upon which the rule rested has been abolished. Still the rule has yet some foundation in the greater density of population, and the fact that under our general laws, the cities still enjoy some special privileges.

It is also insisted that the court misinstructed the jury in that it did not tell the jury that the city was accused of maintaining a common nuisance. The instructions of the court are as follows:

"1. If you believe from the evidence beyond a reasonable doubt that defendant in this county and State, and on the —— day of June and for many weeks prior thereto and within one year previous to the finding of the indictment herein, did unreasonably and unnecessarily and for an unreasonable and unnecessary length of time suffer and permit deep holes or depressions to be and remain in the street or highway described in the proof, or did suffer and permit said street to be so worn as to cause the street car rails to project above the surface of said street or highway, and you further believe that said street or highway was thereby rendered dangerous, unsuitable or unsafe to the public traveling, passing and repassing thereon and having the right then and there to travel, pass and repass thereon, you will find defendant guilty, and fix its punishment at a fine in any amount in your discretion governed by the proof.

"2. Unless you believe from the evidence beyond a reasonable doubt that defendant has been proven guilty, you must acquit it."

The instruction follows the indictment which aptly informed the defendant of the offense it was charged with. It was not necessary that the court should use in the instruction the words "common nuisance." It submitted to the jury the facts which make out a case of nuisance, and when the jury found these facts to exist, the legal conclusion followed.

Judgment affirmed.